NATHAN MARCO and SAMUEL MARCO, Appellants, *v.* THE
LIVERPOOL AND LONDON FIRE AND LIFE INSURANCE COM-
PANY, Respondents.

Upon review, this court is bound by the facts as found by the referee.

Where the Supreme Court have reversed the judgment on the report of the
referee, and have not stated that it is done upon questions of fact, the pre-
sumption will be that the judgment was reversed for errors in law.

THIS appeal comes up from the Supreme Court, third dis-
trict, upon an order of the General Term, reversing a judgment
in favor of the plaintiffs, upon the report of a referee, and
ordering a new trial.

The action was upon a policy of insurance for $1,000,
issued on the 13th of August, 1857, to G. Elle, insuring him
for one year on a stock of ready-made clothing and materials,
in a brick building, No. 156½ River street, Troy.

The complaint alleges that Elle, on the 8th day of Sep-
tember, 1857, with the written consent of the company,
assigned the said policy to the plaintiffs; that the defendants,
on the 3d day of October, 1857, in consideration of five
dollars, transferred the said policy, in writing, to the frame
building, known as No. 109, on the north side of Congress
street, Troy; that a fire occurred in the last mentioned build-
ing, and destroyed ready-made clothing, and materials for
making clothing, owned by the plaintiffs, in said store, of the
value of $1,000; that proof of loss was duly served on the com-
pany.

The defense alleges that the consent to the transfer of the
policy was fraudulently procured by falsely representing that
the plaintiffs had purchased the same goods insured under the
policy with Elle, and that the plaintiffs set the fire, having
previously removed the greater part of the goods belonging
to them from the building.

At the trial the evidence was very conflicting, in respect to
the representation of the purchase of the stock of clothing
and materials belonging to Elle, insured by the policy; but,

on the other branch of the defense, the evidence for the plaintiffs was clear and decisive, leaving no reasonable doubt that the fire was accidental, and that the plaintiffs had not removed any of their goods before the fire, or made any fraudulent claim for goods not destroyed.

The referee found:

1. That the company issued the policy to G. Elle, alleged in the complaint, for the consideration of ten dollars.

2. That the company, afterward, for a valuable consideration, consented to a transfer of the policy to a building in the village of West Troy.

3. That the company, also, afterward, at the same date, consented, in writing, that the interest of Elle in the policy might be assigned to the plaintiffs.

4. That the plaintiffs did not represent that they had purchased the insured property of Elle, nor that the insured property was then in the plaintiffs' store.

5. That Hays, a clerk of the defendants, did state to one of the plaintiffs, at the time of the application for the consent, that it was the practice of insurance companies to have the policy follow the goods originally insured.

6. That the consent was not fraudulently obtained.

7. That the plaintiffs did not purchase the property originally insured, or any part of it.

8. That the plaintiffs purchased from Elle the unexpired term of said policy, and so informed the defendants, at the time of the consent to the assignment and transfer.

9. That, after the consent, Elle assigned to the plaintiffs, in writing, his interest in the policy.

10. That, after the consent and assignment, the defendants inspected the store of the plaintiffs, containing a stock of goods of the same kind as that originally insured, and, after such inspection, consented, by an instrument in writing, annexed to the policy, to its transfer, so as to cover the said stock of the plaintiffs, and the plaintiffs paid to the defendants five dollars for the increased risk, the consent being on the 8th of September, 1857.

11. That the usual price for an insurance of the character and amount covered by this policy was $20, and that the defendants received that sum, in the aggregate, for the risk under that policy.

12. That the plaintiffs' store was totally destroyed by fire, December 20th, 1857, and their entire stock burned, whereby they sustained a loss of upward of $1,000.

13. That the evidence does not show how the fire originated; but there is no proof that it was occasioned by the plaintiffs.

14. That due proofs of loss were given to the defendants, by plaintiffs, March 20th, 1858.

15. That, from these facts, the plaintiffs are entitled to recover from the defendants $1,126.15.

Upon this report, the plaintiffs had judgment for the amount reported due, with costs.

The defendants excepted to the report, on the following grounds, viz.:

1. To the finding that the consent of the defendants to the assignment of the policy was duly obtained.

2. To the finding that the plaintiffs did not represent to the defendants that they had purchased the property insured by the policy, and to the finding that the plaintiffs did not represent that the insured property was then in the plaintiffs' store.

3. To the finding that the consent of the defendants was not fraudulently obtained.

4. To the finding that the defendants consented to the transfer of the policy so as to cover the stock of goods of the plaintiffs.

5. To the finding that the referee could not, from the evidence, find how the fire originated.

6. Also, upon the ground that the referee has not found that the fire originated through the carelessness, negligence, or improper conduct of the plaintiffs.

7. Also, to the finding that the plaintiffs are entitled to recover $1,126.15, and to have judgment therefor, and to every

branch of the findings and conclusions of law of the said referee.

The defendants appealed to the General Term, where an order was made, reversing the said judgment and ordering a new trial. The plaintiffs now appeal from the said order to this court, and have stipulated that an absolute judgment be rendered against them, if the order appealed from be affirmed.

*John H. Reynolds*, for the appellants.

*William A. Beach*, for the respondents.

LEONARD, J. The first and most material objection to the report of the referee urged by the defendants is, that it is against the weight of evidence in finding that the plaintiffs did not represent, at the time they obtained the consent of the company to the transfer of the policy from Elle, that they had purchased the property insured, and that it was then in the plaintiffs' store.

There is oral evidence on both sides of the question; but that principally relied on, as conclusive in favor of the defendants, is the written consent to the transfer, which states, on its face, that the interest of Elle in the policy may be transferred to N. Marco & Son (the plaintiffs), "*as purchasers of the property.*"

On this point, the evidence of Samuel Marco, one of the plaintiffs, who made the negotiation, is as follows: "I said, we wanted the policy transferred to us; I said nothing about buying goods; I said, we had bought the policy, and wanted he should transfer it to Congress street; Mr. Hays came down and looked at the place and the goods, and brought the policy, and told me I should have to give him five dollars more; he said that was a wooden building, and the other brick; he brought the paper (the consent) attached."

On the part of the defendants, Jared G. Bacon, their agent, who issued the policy, testified that Samuel Marco came to his office and (using his own language) "asked me if I would transfer the policy to him; I asked him why he wanted it done; he replied that he had bought Elle's stock of goods

and wanted the benefit of the policy; I asked him where the goods were; he said he had taken them to his store in Congress street; I said to Mr. Hays, in Marco's presence, that he might go down to the store and examine the premises; I then replied to Marco and said, unless you have bought these goods and put them in your store I will not transfer the policy, but that if he had bought them I would consent to the transfer; he replied that he had bought his whole stock of goods."

Hugh Hays, a clerk of the agent, Bacon, testified as follows: "I understood Marco, when he was negotiating with me for the consent to remove the insurance, that his firm had purchased the insured property; that the goods were already in the store in Congress street."

On his cross-examination, Hays further testified that Marco spoke very broken English, very difficult for him to understand, and that there was a possibility that he misunderstood him.

There are three consents indorsed upon the policy—two bearing date the 8th of September, and another on the 3d of October 1857. They were all of them read in evidence.

The three consents read as follows, viz.:

1. "Consent that the interest of G. Elle in this policy may be transferred to N. Marco & Son, *as purchasers of the property.*     J. G. BACON, Agent.

"Troy, September 8, 1857."

2. "This policy is transferred to the two story frame building owned by Mr. McGuire, on the east side of Whitehall street, being the second building south of Utica street, in the village of West Troy, N. Y., and five dollars consideration paid.     J. G. BACON, Agent,

"September 8, 1857."     *Per* Hays.

3. "This policy is hereby transferred to the frame building known as No. 109, on the north side of Congress street, Troy, and five dollars consideration paid for the increased risk.     J. G. BACON, Agent,

"Troy, October 3, 1857.     *Per* H."

The first consent was in the handwriting of Bacon, the agent, and signed by him. The last two were written by his clerk, Hays, by his direction.

There is nothing in the evidence explaining the meaning of the transfer of the policy to the building in Whitehall street, dated the 8th of September. The fire occurred, and the property destroyed, was at 109 Congress street; and it appears that the plaintiffs were in business there at the time the consent to assign the policy was applied for.

So far as anything appears from the evidence, the second consent, of September 8th, on the policy, was wholly inoperative. The instrument that operated to transfer the policy, so as to cover the stock in the building destroyed by fire, was that of October 3d, 1857, the last of the three consents.

It will be observed that the question is not as to the meaning of the consents, or any of them. It is, whether there was any misrepresentation by the plaintiffs, or either of them, as to their having purchased the stock of Elle, and whether the defendants or their agent, Bacon, were influenced by such representations to consent to the transfer.

For the purpose of explaining the terms of these consents, the parol evidence was wholly inoperative; but upon the question of misrepresentation the writing was not conclusive, and was open to explanation by other evidence, either written or by parol.

The fact that the plaintiffs received a consent in writing from the agent, stating that they were purchasers of the property insured, is strongly corroborative of the position claimed by the defendants, that there was such an understanding on the part of the agent; but it is not conclusive that Samuel Marco, who, alone of the plaintiffs, had any conversation with Bacon, did, in fact, so state or represent.

The fact that he spoke in broken English, very difficult to understand, as testified by Hays, the clerk, explains the contradiction in the evidence of the witnesses to my satisfaction. It is not to be assumed, that either Samuel Marco or Mr. Bacon, testified willfully false; but their testimony is to be harmonized, if possible. Bacon wrote the first consent, and

he probably wrote the statement about the purchase as he understood it. It is in conformity with his testimony, as to what Marco said about the purchase of the stock of Elle. The evidence of Samuel Marco appears free from any internal contradiction, inconsistency or prevarication. Standing alone, it is clear from the slightest cause to doubt its entire honesty and truth. The evidence of Bacon, and that afforded from the first consent as prepared by himself, is open to the doubt that he acted upon a misunderstanding of what was said by Samuel Marco, who was a Prussian-Pole, and, as it appears from the evidence of Hays, spoke very broken English. Whether Marco misunderstood Bacon, or Bacon misunderstood Marco, is of no practical importance on the question of misrepresentation. According to the evidence of Hays, the agent, Bacon, was not in the office during the conversation with Marco and Elle, when they applied for the consent to transfer the policy; but that Bacon afterward came in, and he (Hays) told him about it, when Bacon told him to go and see the premises, which he did, and reported to Bacon, and then the consent was executed, and he took the policy down to the plaintiffs. This concurs also with the evidence of Samuel Marco, who states that his conversation was with Hays. These facts indicate that Bacon wrote the consent, either upon the report of his clerk, as to what he had understood from the conversation of Marco, or from having, himself, misunderstood his broken speech. It having been written by Bacon, and afterward sent by Hays to the plaintiffs, takes from the written consent that corroborative force which, under other circumstances, it would possess. It is to be taken now as evidence, only of what Bacon understood when he wrote it.

The want of materiality is also to be taken into consideration, in determining the question of willful or fraudulent misrepresentation.

It appears, from the evidence of Hays, that it is customary to issue a new policy to a third party for the unexpired term, for the same consideration that the company would consent to a transfer. He said, also, if required, we would have

issued a new policy, and have given credit for the unexpired term on the old policy, or have issued a new policy to any other party, or given consent to transfer.

From this evidence, it appears, very plainly, that there was no object for Marco to make any misrepresentation. The plaintiffs could have had a new policy, had they asked for it, receiving credit for the unexpired portion of the policy purchased from Elle, which had then been running only one month from the date it was issued.

These considerations lead me to the conclusion that the referee came to a correct decision on the question of fraudulent representations, and that there was no cause here for the General Term to reverse the judgment.

The judgment of a court or jury, who see the witnesses, and have the best opportunity for determining their character and manner of testifying, ought not to be disturbed on a question of fact, except on very clear and irrefragable evidence of error in the conclusion.   Such a case is not here presented.

The defendants also insist that the agent is not proven to have any authority to consent to an assignment of the policy, and no authority to apply it to any property, except that belonging to Elle and described in the policy; but that, if the authority be assumed or conceded, the consent applies only to a new locality, and not to a new or different subject of insurance.

The consent is somewhat indefinite in its terms; but, I think, a fair reading includes the property within the premises, and not the premises or building within which the ready-made clothing and materials of the plaintiffs were contained. The policy covered a stock of ready-made clothing and materials.   The plaintiffs had similar clothing and materials. They had no interest in the building.   The reasonable conclusion is, that the " transfer to the frame building, known as No. 109, on the north side of Congress street," connected with the nature of the policy, transfers it to the stock of the plaintiffs, and not to the building.   The complaint alleges a

transfer of the policy by the defendants, and no issue is made by the answer in respect to this allegation.

The fact of the transfer is to be deemed admitted, therefore, for the want of any denial. It is, also, to be observed, that there is no exception to the report, pointing to any want of proof of authority by the agent.

There was no motion to dismiss the complaint; and the questions respecting the validity of the transfer by the company, or of the execution of the policy, appear never to have been raised until the present time.

The referee finds that the defendants, by the consent of September 8th, 1857, stipulated that the policy should cover the plaintiffs' property. The referee has mistaken the consent applicable to the case. It is that of October 3d, 1857, that makes the stipulation referred to. This consent applies to No. 109 Congress street, where the fire occurred; while that of September 8th mentions certain premises in Whitehall street, where there has not been any fire, and where the plaintiffs had no property.

The policy is signed by three persons, who are described therein as directors, and have affixed their personal seals, and their signatures, to the instrument. The defendants object that this does not prove a contract binding upon the defendants.

The all-significant answer to this objection is, that the complaint alleges the policy to have been executed by the defendants, and the answer admits it in express terms.

Although the answer alleges that the plaintiffs caused the fire which consumed their property, and fraudulently removed some part of their stock before the fire, no exception is taken to the report for negativing this defense; nor has any point been made by the defendants, in respect to it. It must be considered as having been abandoned as a ground of defense, although a large part of the evidence for the defendants, at the trial, relates to this subject, and was offered for the purpose of fastening this charge upon the plaintiffs. The evidence entirely fails in this respect, as it also does, in my opinion, so far as it relates to the minor charge of false and

fraudulent representations of the purchase of the stock of Elle, covered by the original policy of insurance.

There was no written opinion of the court below reversing the judgment upon the report of the referee; but as no other questions have been discussed by the learned and ingenious counsel for the defendants, it may be assumed, I think, that there were no other causes for the reversal of the report than those which have been here discussed.

The facts found by the referee emphatically warrant the judgment in favor of the plaintiffs; and the evidence, in my opinion, satisfactorily and clearly sustains his findings.

The order of the General Term should be reversed, and the judgment on the referee's report be affirmed, with costs.

DAVIES, Ch. J.   This is an action upon a fire policy issued by the defendants to one G. Elle, insuring him for one year in the sum of $1,000, on a stock of ready-made clothing and materials, in a brick building, No. 156½ River street, in the city of Troy.   It was claimed by the plaintiffs that the policy had been assigned to them by Elle, with the consent of the defendants, and had been, with the consent of the defendants, transferred to the frame building on the east side of Whitehall street, West Troy.   The cause was referred to a referee, who found the facts appearing on the trial, and gave judgment for the plaintiffs.   The General Term of the Supreme Court reversed the judgment, but not upon the facts, as appears by their order, and ordered a new trial.

The facts found by the referee are as follows:

1. That the defendants, for the consideration of the sum of $10, duly issued to one G. Elle the policy of insurance described in the plaintiffs' complaint, and upon which the action was brought.

2. That, afterward, the defendants, for a valuable consideration, consented to a transfer of said policy, by an instrument in writing, to the two-story frame building on the east side of Whitehall street, West Troy, in consideration of five dollars paid.

3. That said G. Elle and the plaintiffs afterward, and on the 8th of September, 1857, duly obtained, from the defendants, a consent that the interest of the said G. Elle in said policy might be assigned and transferred to said plaintiffs, which was and is indorsed upon said policy, in writing, as follows:

" Consent that the interest in this policy may be transferred to N. Marco & Son, as purchasers of the property.

" Troy, *Sept. 8th,* 1857.        J. G. BACON, Agent."

4. That Samuel Marco did not, at the time said consent was obtained, represent to the agent or agents of the defendants that the plaintiffs had purchased the property insured by said policy, and that said Marco did not, at that time, represent to the agent or agents of the defendants that said insured property was then in the plaintiffs' store.

5. That the clerk of the defendants, Hays, did state to said Samuel Marco, at the time application for such consent was made, in substance, that it was the practice of insurance companies to have the policy follow the goods originally insured.

6. That said consent was not fraudulently obtained.

7. That the plaintiffs did not purchase the property originally insured by said policy, or any part thereof.

8. That the plaintiffs purchased the unexpired term of said policy from said Elle, and so informed said defendants at the time of the consent to the assignment and transfer to the plaintiffs by the defendants, as above set forth, and that said consent was not fraudulently obtained.

9. That after the above consent was obtained, and on the 8th of September, 1857, the said Elle, by an instrument in writing, duly sold and assigned his interest in said policy and unexpired term thereof, for a valuable consideration, to the plaintiffs.

10. That, after such consent obtained from the defendants, and assignment made by Elle to plaintiffs, the defendants made personal inspection of the store of the plaintiffs, containing a stock of goods of the same kind and character as

that upon which the said policy was originally issued, at No. 109 Congress street, Troy, and after such inspection, by an instrument in writing annexed to said policy, consented to the transfer of said policy to, and to cover the said stock of goods of said plaintiffs, and said plaintiffs paid to the said defendants five dollars for the increased risk, such consent being the one of September 8th, 1857, above set forth. (By a reference to the testimony, it is apparent that the referee by mistake referred in his report to the consent of September 8th, 1857, when in fact he intended to and did refer to the consent of October 3d, 1857, which was also indorsed on the policy with the two consents of September 8th, 1857, and is in these words:

"This policy is hereby transferred to the frame building known as No. 109 on the north side of Congress street, Troy, and five dollars consideration paid for the increased risk.
"Troy, *Oct. 3d,* 1857.     J. G. BACON, Agent.
*Per* H.")

11. That the usual price for an original insurance, of the character and amount covered by said policy, was $20, and the defendants received, in the aggregate, for the risk under this policy, $20.

12. That said store of the plaintiffs was, on the 20th of December, 1857, totally destroyed by fire; that the plaintiffs, by having their entire stock of ready-made clothing and materials for making the same destroyed by said fire, sustained a loss of upward of one thousand dollars.

13. That there was no proof that the said fire was occasioned by the plaintiffs.

14. That due proofs of loss on the said policy were given to the defendants, by the plaintiffs, on the 20th of March, 1858, and that, from the above facts, the referee found, as a conclusion of law, that the said plaintiffs were entitled to recover the amount of said policy, and the interest thereon.

As already observed, this court, upon this review, is bound, by repeated adjudications, to the truth of the facts, as found by the referee; and if there is no error in law upon these facts,

or those which we are authorized to assume, were found by the referee, to sustain his judgment, then it is the duty of this court to affirm it.

We are without any intimation of the reasons which influenced the Supreme Court in granting a new trial; and as that court has not said that it reversed the judgment on the report of the referee, on questions of fact, we are to assume that it was reversed on a question of law, or, in other words, that the Supreme Court held, taking the facts as found by the referee, that he had erred, in his conclusion of law thereon, that the plaintiffs were entitled to recover. In this, we think, the learned court were clearly in error.

From the facts found by the referee, the arrangement made by the plaintiffs with the defendants was, in all respects, the equivalent to the taking out, by the plaintiffs, from the defendants, of a new policy on their stock of goods, in the store No. 109 Congress street, Troy. The premium demanded was paid, and, without any fault on the part of the plaintiffs, a loss was sustained, to an amount greater than that covered by the policy. Proof of loss was made in due time, and according to the conditions of the policy, and no fact is found which casts any doubt upon the plaintiffs' right of recovery.

The legal conclusion of the referee was, therefore, undeniably correct; and the order granting a new trial should be reversed, and the judgment upon the report of the referee affirmed, with costs.

Judgment accordingly.